Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| MUNICIPIO AUTÓNOMO DE CATAÑO<br><br>Apelado<br><br>v.<br><br>JOSÉ L. BOU SANTIAGO AKA JOSÉ BOU SANTIAGO Y OTROS<br><br>Apelantes | KLAN202400979 | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Civil núm.: BY2024CV01675<br><br>Sobre: Daños y otros |
| MUNICIPIO AUTÓNOMO DE CATAÑO<br><br>Apelado<br><br>v.<br><br>BOU MAINTENANCE SERVICE CORP.; JOSÉ L. BOU SANTIAGO; RICHARD ROE; JANE ROE; ASEGURADORA X<br><br>Apelante | KLAN202401042 | |

Panel integrado por su presidente, el juez Sánchez Ramos, el juez Pagán Ocasio y el juez Rodríguez Flores.

Sánchez Ramos, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de febrero de 2025.

En el contexto de una demanda instada por un municipio, a en la cual se alegó que una corporación desempeñó de forma negligente sus obligaciones bajo un contrato, y que el mismo era nulo porque se obtuvo a raíz de un soborno al anterior alcalde, el Tribunal de Primera Instancia ("TPI") dictó una *Sentencia Parcial* en rebeldía en contra de la corporación y de quien era el presidente de la misma. Según se explica en detalle a continuación, concluimos que actuó correctamente el TPI, excepto en cuanto a la imposición

Número Identificador
SEN2025_____

de responsabilidad personal al presidente de la corporación por las obligaciones corporativas, y en cuanto a la imposición de honorarios por temeridad, pues los demandados no comparecieron a defenderse hasta luego de emitida la sentencia y no puede concluirse que fuese temeraria su determinación de no evitar la presentación de la demanda.

I.

En marzo de 2024, el Municipio Autónomo de Cataño (el "Municipio") presentó la acción de referencia (la "Demanda") en contra de Bou Maintenance Service, Corp. (la "Corporación") y del Sr. José L. Bou Santiago (el "Presidente" o "Sr. Bou").

El Municipio alegó que, en junio de 2019, la Corporación y el Municipio suscribieron un contrato para el sellado del techo de un edificio en Cataño (contrato núm. 2019-000357, o el "Contrato"). Además, se indicó que el Municipio había pagado a la Corporación $190,000.00 por sus servicios bajo el Contrato.

El Municipio sostuvo que el Contrato fue otorgado "mediando fraude, dolo, conspiración, soborno y *kickbacks*" entre el anterior alcalde de Cataño (el "Cano") y el Sr. Bou, por lo cual debía considerarse que el Contrato era "nulo". Se reseñó que el Sr. Bou había acordado declararse culpable en la jurisdicción federal por haberle provisto beneficios económicos al Cano a cambio de que la Corporación obtuviese contratos con el Municipio[1].

---

[1] Véase, *Plea Agreement, Stipulation of Facts*, Apéndice 1 del recurso KLAN202400979, pág. 42-43:
[...]
Defendant JOSÉ BOU-SANTIAGO was the owner of BOU MAINTENANCE SERVICE and Individual A was the elected Mayor of Cataño.
In 2019 JOSE BOU-SANTIAGO secured municipal contracts for Cataño. These municipal contracts included green area maintenance contracts, construction contracts and the purchase, sale, and rental of vehicles. In order to stay competitive with biding for these types of municipal contracts, BOU-SANTIAGO agreed to provide Individual A with benefits in exchange for securing future municipal contracts. Specifically, in or about April of 2019, BOU-SANTIAGO met with Individual A with a Rolex watch. The watch was given to Individual A in exchange for the awarding of a future construction service contract to BOU MAINTENANCE SERVICE.
In June 2019, in exchange for the Rolex watch provided to Individual A, BOU MAINTENANCE SERVICE was awarded a Cataño municipal contract for construction services valued approximately $190,000.00.

El Municipio también alegó que los trabajos contratados fueron realizados de manera deficiente por la Corporación.

El Municipio solicitó al TPI que condenara a los Apelantes, de forma solidaria, a devolver al Municipio lo recibido por la Corporación bajo el Contrato, así como a resarcirle por los daños y perjuicios ocasionados por el incumplimiento con el Contrato, y a satisfacer honorarios de abogado.

El 25 de marzo de 2024, el Municipio presentó una *Solicitud de Expedición de Emplazamientos*. El Municipio expresamente indicó que incluía "copia del emplazamiento dirigido al señor Bou Santiago por conducto del director de la institución correccional de Pensacola, Florida, donde se encontraba confinado, conforme a la Regla 4.4 de las de Procedimiento Civil, 32 LPRA Ap. V". El emplazamiento contenía la siguiente dirección: 110 Rab Ave Pensacola, Florida Estados Unidos, 32509. El 27 de marzo, los emplazamientos dirigidos a la Corporación y al señor Bou Santiago fueron emitidos por la Secretaría del TPI.

El 13 de mayo, el Municipio instó una *Solicitud para que se Expida Emplazamiento por Edicto Dirigido a Bou Maintenance Service, Corp.*[2] El Municipio detalló las diligencias que realizó el emplazador, Sr. Christopher Knapp Romero, y acompañó la solicitud con una declaración jurada de este. Se indicó en la declaración que, el 28 de marzo de 2024, el emplazador recibió un emplazamiento para ser diligenciado por conducto del agente residente de la Corporación, Sa. Julie Colón Ríos (señora Colón Ríos), esposa del

---

Had this matter proceeded to trial, the United States would have presented evidence through the testimony of witnesses as well as physical and documentary evidence which would have proven beyond a reasonable doubt that Defendant did knowingly and willfully conspire and agree Individual A, an agent of the municipality of Cataño, to benefit and enrich himself by securing a municipal contract by paying Individual A a bribe, intending to be influenced and rewarded in connection with a transaction or series of transactions of the municipality of Cataño valued at $5,000.00 or more as opportunities arose.

[2] Véase, *Solicitud para que se Expida Emplazamiento por Edicto Dirigido a Bou Maintenance Service, Inc.*, Apéndice núm. 12 del recurso KLAN2024001042, págs. 178-195.

Sr. Bou. El 8 de abril de 2024, el emplazador visitó un local comercial con la siguiente dirección: Carr. 862 90A, Hato Tejas, Bayamón PR 00959. Por medio de un intercomunicador, una persona que negó identificarse le dijo al emplazador que en ese local opera "Uner Rental", que nada tenía que ver con Bou Maintenance. Explicó que Bou Maintenance tuvo sus oficinas en ese lugar, pero se había ido antes de ellos llegar y que no tenía información adicional. El emplazador llamó por teléfono al (787) 370-4021 y al (787) 364-4021, pero ambos estaban fuera de servicio. En igual fecha, 8 de abril, el emplazador visitó la Urb. San Rafael Estates, en Bayamón, con el propósito de ubicar las propiedades identificadas como 140 y 142. La urbanización tiene control de acceso y lo atendió el Oficial Figueroa, quien le indicó que en las propiedades 140 y 142 no ubica la Corporación ni la señora Colón Ríos.

El 9 de abril, el emplazador envió un correo electrónico a bmscorp.office@gmail.com (correo electrónico de la Corporación según se refleja en la página del Departamento de Estado de Puerto Rico). No obstante, no recibió respuesta alguna. Además, el emplazador realizó una búsqueda en el portal del Catastro Digital en cuanto a la señora Colón Ríos en donde encontró la siguiente dirección: Urb. Las Olas de Boquerón A-4, Cabo Rojo PR. El 9 de abril de 2024, el emplazador visitó dicha dirección. Sin embargo, no localizó propiedad alguna identificada como A-4, razón por la cual habló con la vecina de la propiedad identificada como B-4, quien negó identificarse y le indicó que no existe la propiedad A-4 en el lugar y que no conoce a la señora Colón Ríos. Otro vecino del lugar le dijo al emplazador que tampoco conocía a esa persona.

El 13 de abril, el emplazador se comunicó por vía telefónica con el Lcdo. Ernesto Hernández Millán, quien representó al señor Bou Santiago en el caso penal ante la Corte de Distrito de Puerto Rico, *U.S. v. José Bou Santiago*, 22-379 (ADC), según surge de los

anejos de la Demanda. El letrado le comunicó al emplazador que no conocía a la señora Colón Ríos, ni a la Corporación, y que nunca los había representado.

El 16 de abril de 2024, el emplazador visitó la Alcaldía del Municipio de Bayamón, donde entrevistó al Sr. Lasanta, asistente administrativo y encargado de recibir emplazamientos, quien dijo no conocer ni tener información en cuanto a la señora Colón Ríos y la Corporación. Ese mismo día, el emplazador fue al Cuartel de Policía de Bayamón, donde entrevistó al Agente Benítez, quien dijo no conocer ni tener información en cuanto a la señora Colón Ríos o la Corporación.

El Municipio aseveró que el emplazador también realizó una búsqueda en las redes cibernéticas en cuanto a la señora Colón Ríos y la Corporación y, a pesar de constatar algunas coincidencias, ninguna condujo a información adicional. El 19 de abril, el emplazador visitó la siguiente dirección: Urb. Ciudad Jardín 3, Calle Lilia Barroso M-10, en Toa Alta, debido a que el Sr. Bou y la señora Colón Ríos alegaron residir en dicha dirección, según se desprende de una *Demanda* instada por ambos el 7 de febrero de 2019, ante el TPI, Sala de San Juan (SJ2019CV01224). En dicha urbanización, lo atendió el Oficial Canales, guardia de seguridad, quien no le permitió acceso al emplazador, y le indicó que la señora Colón Ríos y el Sr. Bou residieron allí, pero ya no vivían en esa propiedad.

En igual fecha, el emplazador llamó por teléfono al Lcdo. Luis A. Rosario Román, quien representó a ambos esposos en el mencionado caso ante la Sala de San Juan del TPI, con el propósito de conocer sus paraderos. El abogado dijo haberlos representado anteriormente, pero que, en ese momento, no los representaba y no tenía información que no fuera que el Sr. Bou estaba confinado en los Estados Unidos.

Por último, el 24 de abril, el emplazador visitó la residencia ubicada siguiente dirección: Urb. Venus Gardens, Calle Júpiter 1754, en San Juan. Ello porque, de la Demanda del caso *José Bou Santiago, y otros v. Maria Vera* (SJ2019CV01224), surgía que el Sr. Bou y la señora Colón Ríos eran dueños de esa residencia. El emplazador fue atendido por un hombre de nombre "Félix", quien, a través de una ventana, le dijo que no conocía a la señora Colón Ríos o al Sr. Bou.

Al resultar infructuosas las gestiones del emplazador, según arriba expuestas, el Municipio solicitó el emplazamiento por edicto de la Corporación.

Al cabo de algunos trámites procesales, el 22 de mayo, el TPI ordenó el emplazamiento mediante edicto de la Corporación y se emitió el correspondiente emplazamiento.

El 5 de junio, el Municipio incoó una *Moción Informando Publicación del Emplazamiento por Edicto a Bou Maintenance Service, Corp. y Cumplimiento con las Exigencias de las Reglas 4.6 y 4.7 de Procedimiento Civil.* Comunicó que el emplazamiento fue publicado el 30 de mayo de 2024 en el periódico Primera Hora. Además, el 31 de mayo, el Municipio remitió por correo certificado con acuse de recibo una copia de la *Demanda,* el emplazamiento, junto con sus tres (3) anejos, a la última dirección física y postal conocida de la Corporación, según surge en el Registro de Corporaciones del Departamento de Estado.

El 10 de junio, el TPI dio por cumplida su orden en torno al emplazamiento por edicto de la Corporación.

El 26 de junio, el Municipio interpuso una *Solicitud para que se Expida Emplazamiento por Edicto Dirigido a José L. Bou Santiago* acompañada de varios documentos, entre los que figuran las

declaraciones juradas de los emplazadores (*Affidavit of Non-Service*).[3]

El Municipio detalló las gestiones que realizaron los emplazadores para tratar de emplazar personalmente al Sr. Bou. En específico, el Municipio indicó que, de la página web del Negociado Federal de Prisiones (www.bop.gov), al 2 de abril de 2024, el Sr. Bou figuraba como confinado en la prisión federal de Pensacola, Florida, hasta el 26 de agosto de 2024, fecha de su excarcelación.

El 5 de abril de 2024, a las 9:01 am, el Sr. Channon Baumman, emplazador, fue a la institución correccional, Pensacola FPC 110 Rab. Ave., Pensacola, FL, 32509, para intentar emplazar al Sr. Bou por conducto del director de la cárcel. Sin embargo, se le notificó al emplazador que el Sr. Bou había sido transferido a una casa de transición (*halfway house*), cuya nueva dirección constaba en la página web del Negociado Federal de Prisiones. Otra búsqueda en dicha página web reveló que el Sr. Bou estaría confinado en la Oficina de Gestión de Reingreso Residencial ("RRM", por sus siglas en inglés), en Miami, hasta el 27 de junio de 2024, nueva fecha de excarcelación.

El 2 de mayo de 2024, otro emplazador, el Sr. Joseph Dion, se dirigió a la Oficina de Gestión de Reingreso Residencial (RRM siglas en inglés), ubicada en 401 N. Miami Avenue, Miami, Florida, 33128 a las 4:30 pm. No obstante, la oficina del RRM estaba cerrada y no le respondieron. Al día siguiente, el 3 de mayo, a las 10:00 am, dicho emplazador fue a la referida oficina, pero la encontró cerrada nuevamente. El 6 de mayo, a las 2:30 pm, el emplazador visitó nuevamente la oficina del RRM antes aludida con igual resultado. El emplazador declaró que el representante legal del Municipio le indicó que se comunicara telefónicamente con el personal del RRM

---

[3] Véase, *Solicitud para que se Expida Emplazamiento por Edicto Dirigido a José L. Bou Santiago*, Apéndices 25-32 del recurso KLAN202400979, págs. 120-135.

y contactara la división legal para preguntar la unidad específica en la que residía el Sr. Bou.

El 14 de mayo de 2024, el emplazador recibió un correo electrónico de la Sa. Ashaki Guilbeaux, Especialista de Reingreso Residencial de la Oficina de Prisiones de Estados Unidos. Se le informó que, para emplazar al Sr. Bou, tenía que diligenciar el emplazamiento y la documentación complementaria en las oficinas del RRM, para que luego el personal de esa oficina se asegurara de que el confinado recibiera todos los documentos. Lo anterior, debido a que no tenía autorización para divulgar la localización de ningún confinado, toda vez que no es información pública. Añadió que el personal de la oficina del RRM Miami se encontraba disponible de lunes a viernes desde las 6:00 am hasta las 2:00 pm.

Durante los días 21, 22, 23 y 28 de mayo de 2024, en diferentes horarios, el emplazador intentó diligenciar el emplazamiento del Sr. Bou en las oficinas de Miami del RRM. No obstante, al no encontrarse disponible un supervisor autorizado a recibir los emplazamientos, los esfuerzos del emplazador resultaron infructuosos.

El 30 de mayo de 2024, el emplazador acudió nuevamente a las oficinas del RRM Miami, a las 3:00 pm. Se le informó que, desde el 16 de mayo de 2024, el señor Bou Santiago se encontraba bajo restricción domiciliaria. No obstante, la dirección de la residencia no le fue revelada.

De una búsqueda en la página web "trupeoplesearch.com", bajo el nombre de José L. Bou Santiago, se encontró una posible residencia con la siguiente dirección 1427 El Conte Dr. Davenport, FL, 33896. La dirección fue corroborada por medio de un documento denominado *Motion Requesting Authorization to Travel* instada el 12 de septiembre de 2022 por Sr. Bou en el caso criminal *U.S. v. José Bou Santiago*, 22-379 (ADC). Del escrito se desprende

que el Sr. Bou tenía en ese momento una propiedad privada en dicha dirección.

Subsecuentemente, se contrataron los servicios de la Sa. Laurynn Vaughn para emplazar al Sr. Bou en la residencia ubicada en 1427 El Conte, Dr. Davenport, FL, 33896. De la declaración jurada de la emplazadora se desprende que intentó emplazar en cinco (5) ocasiones distintas al Sr. Bou. Los intentos resultaron infructuosos y, el 15 de junio de 2024, la emplazadora preguntó a personal de seguridad del lugar y a vecinos de la propiedad sobre los residentes de esta. Sin embargo, estos alegaron que no tenían conocimiento de los dueños o residentes de la propiedad o si se trataba de una residencia vacacional.

Al resultar ineficaces las gestiones de los emplazadores, según arriba reseñadas, el Municipio solicitó el emplazamiento por edicto del Sr. Bou.

El 27 de junio, el TPI autorizó el emplazamiento por edicto del Presidente. Consecuentemente, el 1 de julio, se publicó en el periódico Primera Hora el edicto de emplazamiento. El 5 de julio, el Municipio le envió al Presidente, por correo certificado con acuse de recibo, a su última dirección física, copia de la Demanda, sus anejos y el emplazamiento. Así lo informó el Municipio mediante una *Moción Informando Publicación del Emplazamiento por Edicto a José L. Bou Santiago y Cumplimiento con las Exigencias de las Reglas 4.6 y 4.7 de Procedimiento Civil* presentada el 9 de julio.

Mientras tanto, el 2 de julio, el Municipio interpuso una *Solicitud de Anotación de Rebeldía* en contra de la Corporación. Sostuvo que había transcurrido el término de treinta (30) días sin que la Corporación presentara su alegación responsiva o una solicitud de prórroga, por lo cual procedía anotar y dictar sentencia en rebeldía.

El 8 de julio, el TPI emitió una *Orden* de anotación de rebeldía a la Corporación.

De igual modo, el 1 de agosto, el Municipio solicitó que se le anotara la rebeldía al Presidente y se dictara sentencia en rebeldía.

El 3 de septiembre, el TPI notificó una Sentencia Parcial (la "Sentencia"). El TPI consignó que la Corporación y el Presidente estaban en rebeldía, por no haber contestado oportunamente la Demanda. El TPI declaró con lugar la Demanda, por lo cual condenó a la Corporación y al Presidente a pagar al Municipio $190,000.00, más la suma de $18,172.50 por concepto de honorarios de abogado por temeridad. En cuanto a esto último, el TPI razonó que la Corporación y el Presidente habían sido temerarios "al hacer necesario un pleito que pudo evitarse". El TPI dispuso que los procedimientos continuarían en cuanto a la causa de acción sobre daños y perjuicios. El **5 de septiembre**, la Sentencia fue notificada por edicto y remitida por correo certificado con acuse de recibo a las últimas direcciones conocidas de los Apelantes.

El 20 de septiembre, el Presidente presentó una *Moción de Reconsideración y Moción de Desestimación al Amparo de los Incisos (3) y (4) de la Regla 10.2 de Procedimiento Civil* (la "Reconsideración").

Al día siguiente, 21 de septiembre, la Corporación instó una *Moción de Relevo de Sentencia Parcial y Desestimación con Perjuicio por Falta de Jurisdicción* (la "Moción de Relevo").

El 22 de octubre, el TPI notificó la denegatoria tanto de la Reconsideración como de la Moción de Relevo.

En desacuerdo, el **1 de noviembre**, el Presidente presentó uno de los recursos de referencia (KLAN202400979); formula los siguientes señalamientos de error:

> 1. Erró el TPI al no dejar sin efecto la sentencia dictada en rebeldía el 3 de septiembre de 2024 ya que la orden del 27 de junio de 2024 que autorizó el emplazamiento por edictos de Bou Santiago carece de validez. El Municipio de Cataño no demostró *según lo requiere la*

*Regla 4.6 de Procedimiento Civil y la jurisprudencia reiterada del Tribunal Supremo*, las diligencias necesarias para justificar dicho tipo de emplazamiento.

2. Erró el TPI al no dictar una sentencia desestimando con perjuicio la demanda instada en contra de Bou Santiago, pues al ser nula la orden que autorizó el emplazamiento por edictos, y tratarse de una segunda ocasión en que el Municipio de Cataño demanda a Bou Santiago por los mismos hechos sin emplazarlo conforme a derecho dentro del término que dispone la Regla 4.3(c) de Procedimiento Civil, el TPI tenía que desestimar con perjuicio la demanda en su contra.

3. De este Honorable Tribunal determinar que el emplazamiento a Bou Santiago se efectuó legalmente, el fallo del TPI es incorrecto. Aun aceptando como verdaderos los hechos expuestos en la demanda. Bou Santiago no tiene responsabilidad solidaria con Bou Maintenance respecto a la obligación contractual reclamada, ni tampoco por haber sido propietario de dicha empresa, según se alega en la demanda.

4. Erró el TPI al imponer una condena de honorarios de abogados por temeridad, sin base en una conducta de parte de los demandados que haya ocurrido luego del inicio del pleito.

Por su parte, el **21 de noviembre**, la Corporación presentó el otro recurso de referencia (KLAN202401042[4]); formula los siguientes señalamientos de error:

Primer Error: Erró el TPI al ordenar la publicación de una sentencia por edictos concediendo el término de 30 días para presentar el recurso de apelación, toda vez que el término aplicable para presentar el recurso de apelación es el de 60 días conforme la Regla 52.2(C) de Procedimiento Civil.

Segundo Error: Erró el TPI al no relevar la Sentencia Parcial dictada en rebeldía el 3 de septiembre de 2024 ya que la misma es nula, toda vez que el emplazamiento por edictos fue insuficiente por no apercibir correctamente a BMS del término para comparecer.

Tercer Error: Erró el TPI al anotarle la rebeldía a BMS previo a que transcurrieran los 60 días que concede la Regla 10.1 de Procedimiento Civil para presentar la correspondiente alegación responsiva cuando un municipio es parte.

Cuarto Error: Erró el TPI al denegar la solicitud de desestimación con perjuicio de la demanda presentada

---

[4] Este recurso se acoge como una petición de *certiorari*, pues se solicita la revisión de una determinación post-sentencia del TPI (la denegatoria de la Moción de Relevo). El recurso no puede considerarse como una apelación de la Sentencia porque se presentó luego de expirado el término para apelar, el cual no fue interrumpido por la Moción de Relevo, pues esta se presentó luego del término reglamentario de 15 días aplicable a una moción de reconsideración.

en contra de BMS, toda vez que el Municipio Autónomo de Cataño desistió de una primera demanda contra BMS por los mismos hechos.

El 10 de diciembre, ordenamos la consolidación de ambos recursos. Oportunamente, el Municipio presentó escritos en oposición. Resolvemos.

II.

El emplazamiento es el mecanismo mediante el cual los tribunales adquirimos jurisdicción sobre una persona y, a su vez, esta queda notificada de que existe un procedimiento judicial en su contra, y se le requiere comparecer para formular la alegación que corresponda. *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 480 (2019); *Sánchez Rivera v. Malavé Rivera*, 192 DPR 854, 869 (2015); *Medina v. Medina*, 161 DPR 806, 818 (2004). De esta forma, la parte demandada tiene la oportunidad de ejercer su derecho a comparecer y a presentar prueba a su favor. *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 30 (2014).

La Regla 4 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 4, es la que reglamenta el proceso y las formalidades del emplazamiento en los pleitos civiles. Reconoce dos métodos para diligenciar el emplazamiento: de forma personal o mediante edicto. *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1005 (2021); *Sánchez Ruiz v. Higuera Pérez*, 203 DPR 982, 987 (2020). El emplazamiento personal es el método idóneo para adquirir jurisdicción. Sin embargo, por excepción y en circunstancias específicas, nuestro ordenamiento permite que se utilice el mecanismo del emplazamiento por edicto. *Caribbean Orthopedics*, supra.

En lo aquí pertinente, la Regla 4.6 de Procedimiento Civil, 32 LPRA Ap. V, R. 4.6, gobierna todo lo relacionado con el emplazamiento por edictos y su publicación. Al respecto, se autoriza al tribunal a dictar una orden para disponer que el emplazamiento

se haga por un edicto sin que sea requerido un diligenciamiento negativo como condición previa en cuatro (4) situaciones determinadas: **1) cuando la persona a ser emplazada esté fuera de Puerto Rico**; **2) cuando la persona a ser emplazada, aunque se encuentre en Puerto Rico, no puede ser localizada después de realizadas las diligencias pertinentes**; 3) cuando la persona a ser emplazada, estando en Puerto Rico, se oculta para no ser emplazada; y (4) cuando se trata de una corporación extranjera sin agente residente. Véase, *Rivera v. Jaume*, 157 DPR 562, 576 (2002).

En *Rivera v. Jaume*, 157 DPR a las págs. 576-577, se estableció que, si el demandado está fuera de Puerto Rico y se conoce su dirección, no es necesario intentar citarle personalmente:

> En los casos en que el demandado se encuentre fuera de Puerto Rico y la parte demandante ignora la dirección del demandado fuera de Puerto Rico, se exige prueba de las diligencias específicas para localizar al demandado antes de expedir el emplazamiento por edicto y relevar al demandante del envío por correo de los documentos pertinentes. Por el contrario, **cuando el demandado se encuentra fuera de Puerto Rico, y al demandante le consta el lugar específico donde éste se encuentra y así lo informa al tribunal, no se requiere la comprobación de diligencias vigorosas y honesto esfuerzo para citarle personalmente**, y es compulsorio el envío por correo certificado con acuse de recibo de la copia de la demanda, la orden para emplazar mediante edictos y el edicto mismo. (Énfasis provisto).

Es decir, en aquellos casos cuando el demandado se encuentra fuera de Puerto Rico y se desconoce su dirección, se exige prueba de las diligencias específicas realizadas para localizarle, antes de expedir el emplazamiento por edicto y relevar a la parte demandante del envío por correo de los documentos correspondientes.

Por el contrario, "cuando el demandado se encuentra fuera de Puerto Rico, y al demandante le consta el lugar específico donde éste se encuentra y así lo informa al tribunal, no se requiere la comprobación de diligencias vigorosas y honesto esfuerzo para

citarle personalmente". *Rivera*, 157 DPR a la pág. 577[5]. Es entonces compulsorio el envío por correo certificado con acuse de recibo de la copia de la demanda, la orden para emplazar mediante edictos y el propio edicto.

Por otro lado, la orden que autoriza el emplazamiento por edicto dispondrá, además, "que dentro de los diez (10) días siguientes a la publicación del edicto se le dirija a la parte demandada una copia del emplazamiento y de la demanda presentada, por correo certificado con acuse de recibo ..., al lugar de su última dirección física o postal conocida." Regla 4.6 de Procedimiento Civil, *supra*. Ahora bien, esta disposición provee para que el demandante pueda ser relevado del requisito de notificación si justifica, mediante declaración jurada, a satisfacción del tribunal, que, a pesar de los esfuerzos dirigidos a encontrar una dirección física o postal, ello no fue posible. Íd.

De otra parte, en cuanto al término para diligenciar un emplazamiento, la Regla 4.3 (c) de Procedimiento Civil, 32 LPRA Ap. V, 4.3 (c), establece que "[e]l emplazamiento será diligenciado en el término de ciento veinte (120) días a partir de la presentación de la demanda o de la fecha de expedición del emplazamiento por edicto". Una vez transcurrido dicho término sin que el emplazamiento haya sido diligenciado, "el Tribunal deberá dictar sentencia decretando la desestimación y archivo sin perjuicio. Una subsiguiente desestimación y archivo por incumplimiento con el término aquí dispuesto tendrá el efecto de una adjudicación en los méritos". Íd.

Sobre el diligenciamiento del emplazamiento personal, expedido el mismo, la parte que lo solicita cuenta con un término improrrogable de ciento veinte (120) días para diligenciarlo. *Bernier González v. Rodríguez Becerra*, 200 DPR 637, 649 (2018); *Sánchez*

---

[5] Nota al calce en el original: [v]éase J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. JTS, 2000, T. I, pág. 175.

*Ruiz*, 203 DPR a la pág. 991. Si en ciento veinte (120) días el demandante no ha podido diligenciar el emplazamiento, automáticamente se desestimará su causa de acción. *Bernier González*, supra.

De otro lado, al solicitar el emplazamiento por edictos, el término improrrogable de ciento veinte (120) días para emplazar comienza a transcurrir cuando se autoriza y se expide el emplazamiento por edicto. *Sánchez Ruiz*, 203 DPR a la pág. 994. Para ello, la parte demandante tiene que solicitar su expedición antes de que finalice el término para diligenciar el emplazamiento personal. Íd. Así pues, una vez se intenta sin éxito emplazar personalmente a un demandado, y tras acreditar las diligencias realizadas para citarlo personalmente se solicita emplazarlo por edictos dentro del plazo de ciento veinte (120) días, comienza a decursar un nuevo término improrrogable de ciento veinte (120) días para emplazar por edictos, una vez se expida el correspondiente emplazamiento. *Sánchez Ruiz*, supra; *Bernier González*, 200 DPR a la pág. 650.

III.

La Regla 45.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 45.1, rige la anotación de rebeldía y, al respecto, provee lo siguiente:

> Cuando una parte contra la cual se solicite una sentencia que concede un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante una declaración jurada o de otro modo, el Secretario o Secretaria anotará su rebeldía.

> El tribunal a iniciativa propia o a moción de parte, podrá anotar la rebeldía a cualquier parte conforme a la Regla 34.3(b)(3) de este apéndice.

> Dicha anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b) de este apéndice.

> La omisión de anotar la rebeldía no afectará la validez de una sentencia dictada en rebeldía.

El primer párrafo de la precitada Regla admite la anotación de la rebeldía por incomparecencia. "[E]sto ocurre cuando la parte demandada no comparece después de haber sido emplazado, no se defiende mediante moción ni presenta oportunamente la contestación a la demanda". *Mitsubishi Motors v. Lunor y otros,* 212 DPR, 807, 824 (2023). Por su parte, "el segundo párrafo autoriza a que, de acuerdo con la Regla 34.3(b)(3) de Procedimiento Civil, el tribunal anote la rebeldía como sanción. Íd.

El propósito de la anotación de rebeldía es desalentar el uso de la dilación como estrategia de litigación. El tribunal anotará la rebeldía a la parte contra la cual se solicite un remedio, que haya dejado de presentar alegaciones, no comparezca o no se defienda de forma alguna. Regla 45.1 de Procedimiento Civil, *ante*; *González Pagán v. Moret Guevara,* 202 DPR 1062 (2019); *Rivera Figueroa v. Joe´s European Shop,* 183 DPR 580, 589 (2011). Es decir, cuando una parte ha dejado de ejercitar su derecho a defenderse, se coloca en la postura procesal de la rebeldía. *Bco. Popular v. Andino Solís,* 192 DPR 172, 179 (2015).

Las consecuencias jurídicas de la anotación de rebeldía pueden ser variadas. Inicialmente, se admiten todas las materias bien alegadas en la demanda. *Ocasio v. Kelly Servs.,* 163 DPR 653, 670 (2005); *Álamo v. Supermercado Grande, Inc.,* 158 DPR 93, 101 (2002); *Continental Ins. Co. v. Isleta Marina, Inc.,* 106 DPR 809, 816 (1978). En ese sentido, el demandado al que se le anota una rebeldía renuncia a presentar prueba contra las alegaciones de la demanda y a levantar sus defensas afirmativas. *Rodríguez v. Tribunal Superior,* 102 DPR 290, 294 (1974). A una parte demandada en rebeldía -que ha comparecido previamente- le cobija el derecho a conocer del señalamiento, asistir a la vista, contrainterrogar los

testigos de la parte demandante, impugnar la cuantía y apelar la sentencia. *Continental Ins., Co.*, 106 DPR a la pág. 817. No renuncia a las defensas de falta de jurisdicción o que la demanda no aduce hechos constitutivos de una causa de acción en favor del reclamante. En otras palabras, un trámite en rebeldía no garantiza, *per se*, una sentencia favorable al demandante; no se admiten hechos incorrectamente alegados como tampoco conclusiones erróneas de derecho.

IV.

Los honorarios de abogado constituyen una sanción contra quien, con su temeridad, provocó un pleito que pudo evitarse, lo prolongó innecesariamente o promovió que otra parte incurriera en gestiones evitables. *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999). Incurre en temeridad aquella parte que, "con terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito." *Torres Montalvo v. Gobernador ELA*, 194 DPR 760, 778 (2016); *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 866 (2008). Véase, además, *Torres Ortiz v. E.L.A.*, 136 DPR 556, 565-66 (1994).[6]

Así pues, los honorarios por temeridad buscan "disuadir la litigación innecesaria y alentar las transacciones, mediante la imposición de sanciones a la parte temeraria, que compensen los perjuicios económicos y las molestias sufridas por la otra parte". *Torres Ortiz*, 136 DPR a la pág. 565. La imposición de honorarios de abogado por temeridad es una facultad discrecional del tribunal que

---

[6] A modo de ejemplo y sin que constituya un listado taxativo, puede incurrirse en conducta temeraria cuando en la contestación a la demanda se niegue responsabilidad, pero esta se acepte posteriormente; cuando la parte demandada se defienda injustificadamente de la acción en su contra; cuando la parte demandada crea que la cantidad reclamada es exagerada y esa sea la única razón para oponerse a los reclamos del demandante; cuando el demandado se arriesgue a litigar un caso del que surja claramente su responsabilidad; y cuando una parte niegue la certeza de un hecho, a pesar de constarle su veracidad. *O.E.G. v. Román González*, 159 DPR 401, 418 (2003).

no será variada a menos que la misma constituya un abuso de discreción, o cuando la cuantía sea excesiva o exigua. Véase, *Andamios de P.R. v. Newport Bonding,* 179 DPR 503, 520 (2010); *Monteagudo Pérez v. ELA*, 172 DPR 12, 31 (2007); *Ramírez v. Club Cala de Palmas*, 123 DPR 339, 350 (1989). Ahora bien, una vez el tribunal determina que la parte incurrió en dicha conducta, está obligado a conceder los honorarios a favor de la parte prevaleciente. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123 (2013).

La determinación de temeridad descansa en la sana discreción del TPI, *Sucn. Mena Pamias v. Meléndez et al.*, 212 DPR 758, 780 (2023) y los tribunales apelativos deben intervenir solo cuando surja claramente abuso de discreción. Íd.; *VS PR, LLC v. Drift-Wind, Inc.*, 207 DPR 253, 273 (2021). De otra parte, en casos de rebeldía por incomparecencia, la doctrina tradicional es que la incomparecencia no constituye temeridad por lo cual no procede la imposición de honorarios de abogado; pero cuando es como sanción por conducta en el trámite del litigio, nada impide su imposición. J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, segunda edición, tomo IV, 2011, pág. 1314. En todo caso de rebeldía, el tribunal debe apreciar los hechos de cada caso en particular y determinar si el demandado fue temerario al permitir que el caso fuera a los tribunales. Cuevas Segarra, *op. cit.*, pág. 1314. A pesar de lo anterior, "el tribunal puede adjudicar honorarios de abogado por concepto de temeridad antes de la radicación del pleito". Cuevas Segarra, *op. cit.*, págs. 1314-1315; véase, además, *Raoca Plumbing v. Trans World*, 114 DPR 464 (1983).

V.

En primer lugar, los Apelantes impugnan la determinación del TPI de autorizar que se les emplazara por edicto. No tienen razón, pues el récord claramente sustenta la corrección de lo actuado por el TPI en este sentido.

En cuanto al Presidente, el Municipio conocía la dirección de este, fuera de Puerto Rico, al presentarse la Demanda (una penitenciaria federal en el estado de Florida). Al ser una dirección conocida fuera de Puerto Rico, no era necesario, en ese momento, que el Municipio acreditara las diligencias que realizó antes de solicitar un emplazamiento por edicto. Aun así, el Municipio intentó emplazar personalmente al Presidente, a través de varias gestiones (por ejemplo, por conducto de las autoridades federales bajo cuya custodia estaba dicha persona y en una residencia que surgía del récord judicial de otro caso). No obstante, el emplazamiento personal no se pudo diligenciar.

Así pues, las múltiples declaraciones juradas de los emplazadores presentadas por el Municipio demostraron que se realizaron diligencias suficientes para emplazar personalmente al Sr. Bou. Estas declaraciones exponen, con suficiente detalle, los hechos concretos realizados por los emplazadores para intentar ubicar al Sr. Bou. Adviértase, además, que del récord no surge alegación o indicio alguno que impugne la corrección o la autenticidad de las direcciones o las exigencias de las autoridades federales para recibir un emplazamiento personal dirigido al Sr. Bou.

Por su parte, también surgen del récord las numerosas gestiones del Municipio realizadas para emplazar personalmente a la Corporación, por medio de su agente residente, la señora Colón Ríos, esposa del Sr. Bou.[7] Por tanto, el TPI actuó acertadamente al autorizar que se emplazara por edicto a la Corporación.

En segundo lugar, y contrario a lo expuesto por la Corporación, no procede el relevo de la Sentencia por el hecho de

---

[7] Cuando la parte demandada es una corporación doméstica, el emplazamiento se diligenciará mediante la entrega personal de este y copia de la demanda, a un oficial, agente administrativo o agente general autorizado a recibir emplazamientos. Regla 4.4(e) de Procedimiento Civil, 32 LPRA Ap. V, R. 4.4(e); *Rivera Torres v. Díaz López*, 207 DPR 636, 648 (2021).

que el emplazamiento dirigido a la Corporación indicase que el término para contestar la Demanda era de 30 días, en vez de 60 días. Adviértase que el emplazamiento dirigido a la Corporación se publicó y envió por correo certificado a la Corporación a finales de mayo, pero no fue hasta mediados de septiembre que la Corporación decidió comparecer por primera vez al TPI. Por tanto, se trata de un error inconsecuente, al no haberse alegado que el mismo haya afectado la capacidad de la Corporación para defenderse adecuadamente. Puesto de otra forma, la Corporación no ha siquiera alegado que sus derechos esenciales se perjudicasen por causa del error en el término informado para contestar la Demanda.

Tampoco conlleva el relevo, re-notificación o revocación de la Sentencia, el hecho de que, en el edicto de notificación de la misma, se consignara que los Apelantes tendrían 30 días para apelar, en vez de 60 días, de conformidad con la Regla 52.2(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 52.2(c). El error en el término para apelar no se ha alegado haya tenido consecuencia alguna para ninguno de los Apelantes. Véase *Velez Seguinot v. A.A.A.*, 164 DPR 772, 793 (2005).[8]

En tercer lugar, tampoco conlleva la revocación de la Sentencia el que el TPI le hubiese anotado la rebeldía a la Corporación antes de que expirase el término de sesenta (60) días que dicha parte tenía para contestar la Demanda. Una vez más, la Corporación no elabora teoría alguna sobre cómo ello habría afectado su capacidad para defenderse. Recuérdese que, a pesar de haberse perfeccionado su emplazamiento a finales de mayo, la

---

[8] La jurisprudencia en la que descansa la Corporación no es aplicable al caso de autos. En *Dávila Pollock v. RF Mortgage*, 182 DPR 86 (2011), se validó una notificación enmendada del TPI, pues en la anterior nada se consignó en cuanto a término para apelar. En *Berrios Fernández v. Vázquez Botet*, 196 DPR 245 (2016), la parte afectada por el error en notificación sí se vio afectada por el mismo, pues no acudió al Tribunal de Apelaciones bajo la premisa de que no se había resuelto una moción sobre determinaciones de hechos adicionales. Por su parte, en *Picorelli López v Dpto. de Hacienda*, 179 DPR 720 (2010), se trataba de una deficiencia en una notificación administrativa, la cual afectó la capacidad de la parte para solicitar una revisión oportuna del dictamen objeto del caso.

Corporación no compareció al TPI hasta mediados de septiembre, casi cuatro meses luego. Además, la Sentencia no se emitió hasta principios de septiembre, mucho luego de expirado el término de 60 días para que la Corporación contestara la Demanda. Por tanto, la apresurada anotación de rebeldía no afectó los derechos de la Corporación, pues esta tuvo tiempo suficiente para comparecer oportunamente ante el TPI. No obstante, optó por no defenderse hasta casi cuatro meses luego de haber sido emplazada, y hasta dos semanas luego de haberse emitido la Sentencia.

En cuarto lugar, concluimos que el récord no le permitía al TPI imponer responsabilidad personal al Presidente por la devolución del dinero recibido por la Corporación. La regla general es que los oficiales y accionistas de una corporación no responden por las obligaciones de la corporación. La Demanda carece de alegaciones que le permitiesen al TPI concluir que está aquí presente alguna de las excepciones a esta regla general. Solo se alega que el Presidente se enriqueció a raíz del Contrato, que este conocía que la Corporación realizó el trabajo de forma negligente y que fue el Presidente quien "provocó" la nulidad del Contrato.

Sin embargo, nada de lo anterior tiene como consecuencia que se pueda descorrer el velo corporativo. Si obtener ganancias en lo personal causara que se imponga responsabilidad personal a un accionista u oficial por actos corporativos, desaparecería la personalidad independiente corporativa, pues en una corporación con fines de lucro, todo oficial o accionista participa con el fin de lucrarse. Tampoco tiene pertinencia que el Presidente conociera sobre la negligencia de la Corporación. Naturalmente, la Corporación tiene que actuar a través de personas; sin embargo, la norma es que cuando una corporación incumple con una obligación contractual, responde la corporación, no las personas naturales a través de quienes la corporación faltó a sus deberes contractuales.

Además, aun de considerarse nulo el Contrato, ello nada aporta en cuanto a la responsabilidad personal del Presidente; dicha nulidad únicamente alcanza a la Corporación, única entidad que suscribió el Contrato. No hay tampoco en la Demanda alguna otra causa de acción viable, y bien alegada, contra el Presidente.

Finalmente, concluimos que también tiene razón el Sr. Bou al plantear que erró el TPI al determinar que este incurrió en temeridad[9]. Resaltamos que, según arriba expuesto, de ordinario la incomparecencia no constituye temeridad. J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, segunda edición, tomo IV, 2011, pág. 1314. Más aún, tampoco el récord le permitía al TPI concluir que el Sr. Bou, por no tener alguna defensa fáctica o jurídica viable, debió haber evitado la presentación de la Demanda. De hecho, como hemos visto, el Presidente sí tenía una defensa válida a la Demanda, entiéndase, que, en su carácter individual, no procedía que este respondiese por la Corporación en lo relacionado con la ejecución del Contrato.

VI.

Por los fundamentos que anteceden, en cuanto al recurso KLAN202400979, se modifica la Sentencia apelada a los fines de eliminar la imposición de responsabilidad, así como la condena por temeridad impuesta, al Sr. José L. Bou Santiago y, así modificada, se confirma la misma. En cuanto al recurso KLAN202401042, considerado el mismo como una petición de certiorari, se deniega la expedición del auto solicitado.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

---

[9] Estamos impedidos de considerar este asunto en cuanto a la Corporación se refiere. Este es un asunto que no es susceptible de plantearse a través de una moción de relevo de sentencia y, de hecho, el mismo no fue planteado por la Corporación en el recurso que nos ocupa.

El juez Pagán Ocasio está conforme con la determinación de la mayoría del panel en el caso **KLAN202400979**.

No obstante, disiente, sin opinión escrita, de la determinación tomada en el caso **KLAN2024001042**. En dicho caso entiende que debe revocarse la sentencia emitida por el Tribunal de Primera Instancia, al ser contraria a derecho.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones